**IN THE UNITED STATES DISTRICT COURT**
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | |
|---|---|
| RIVERCLIFF COMPANY, INC. | * |
| | * |
| Plaintiff | * |
| | * |
| V. | * |
| | *   NO: 4:10CV00330 SWW |
| RESIDENCES AT RIVERDALE GP, | * |
| LLC, ET AL. | * |
| | * |
| Defendants | |

## ORDER

Plaintiff Rivercliff Company, Inc. ("Rivercliff") brings this diversity action against Residences at Riverdale GP, LLC ("RAR GP, LLC") and Residences at Riverdale, LP ("RAR LP") (collectively, "the RAR entities"), David F. Stapleton ("Stapleton"), and Nations Construction ("Nations"), seeking damages and injunctive relief for trespass to land, breach of the duty of an adjoining landowner to provide lateral support, and negligence.

Pending before the Court are (1) Rivercliff's motion for summary judgment (docket entries #41, #42, #43), Defendants' responses in opposition (docket entries #61, #62, #63, #66, #67, #68), and Rivercliff's replies (docket entries #69, #79); (2) Defendants' motion to exclude expert testimony and for summary judgment on Rivercliff's lateral support claim (docket entries #46, #47, #54), Rivercliff's response in opposition (docket entries #70, #71, #77), and Defendants' reply (docket entry #82); (3) Defendants' motion to strike the affidavit of Mark Wyatt (docket entries #80, #81), Rivercliff's response in opposition (docket entry #88), and Defendants' reply (docket entry #89); (4) Stapleton's and the RAR entities' motion for summary judgment on punitive damages (docket entries #48, #50, #54), Rivercliff's response in opposition

(docket entry #70, #71, #73), and the separate defendants' reply (docket entry #83); (5) Nations' motion for summary judgment on punitive damages (docket entries #49, #52, #53), Rivercliff's response in opposition (docket entry #74), and Nations' reply (docket entry #85); (6) Stapleton's and the RAR entities' motion for summary judgment on Rivercliff's veil-piercing claim (docket entries #51, #54, #57), Rivercliff's response in opposition (docket entries #70, #71, #72), and the separate defendants' reply (docket entry #84); and (7) Rivercliff's motion to compel discovery responses from Stapleton and the RAR entities (docket entries #32, #33), the separate defendants' response in opposition (docket entry #34), and Rivercliff's reply (docket entry #36).

After careful consideration, and for reasons that follow, Rivercliff's motion for summary judgment is denied, Defendants' motion to exclude expert testimony and for summary judgment on Rivercliff's lateral support claim is denied, Defendants' motion to strike affidavit testimony is denied, Stapleton's and the RAR entities' motion for summary judgment on punitive damages is denied, Nations' motion for summary judgment on punitive damages is granted, Stapleton's and the RAR entities' motion for summary judgment on Rivercliff's veil-piercing claim is denied, and Rivercliff's motion to compel discovery responses is granted.

## Background

Plaintiff Rivercliff owns real property in Little Rock ("the Rivercliff Property"), which contains the Rivercliff Apartments. The RAR entities, owned in part by Defendant Stapleton, purchased property ("the Residences Property") adjacent to the Rivercliff Property. A steep hillside exists at or near the area where the Rivercliff and Residences Properties meet, and Magnolia Avenue, a private road owned and operated by Rivercliff, is located at the crest of the hill.

In October 2008, the RAR entities commenced construction of an apartment complex on the Residences Property. Rivercliff alleges that its representative warned Stapleton that any excavation of the aforementioned hillside would likely cause damage to the Rivercliff Property and that Defendant Stapleton responded that no such excavation would occur. According to Rivercliff, despite Stapleton's assurances, agents of the RAR entities, including Defendant Nations, negligently excavated the base of the hillside, which removed lateral support for the Rivercliff Property and damaged Magnolia Avenue, the only means of ingress and egress to the Rivercliff Apartments.

Rivercliff sues the RAR entities for breach of the duty to provide lateral support and trespass, *see* Amended Complaint, Counts I & III, and sues Nations for trespass and negligent excavation. *See* Amended Complaint, Counts II & IV. By way of relief, Rivercliff seeks compensatory damages in excess of $100,000, punitive damages, and an injunction requiring the RAR entities to restore lateral support and restore stability to the hillside. Additionally, Rivercliff seeks to hold Stapleton liable for damages assessed against the RAR entities under a veil-piercing theory. *See* Amended Complaint, Count V.

## Rivercliff's Motion for Partial Summary Judgment

Rivercliff moves for partial summary judgment,[1] asserting that the RAR entities are liable

---

[1] Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

for injury to the Rivercliff Property under strict liability and negligence standards.

### Strict Liability

Under Arkansas law, a landowner has an absolute right to subjacent and lateral support of his property in its natural condition: "One who excavates on his own land, so that by the operation of the natural and ordinary causes which he takes no precaution to guard against, the land of another falls into the excavation, is liable to the latter for the injury to the land in its natural condition, but not for injuries to buildings or improvements, without proof of actual negligence." *Paris Purity Coal Co. v. Pendergrass*, 104 S.W.2d 455, 457 (Ark. 1937). In other words, the absolute right to lateral and subjacent support of land does not extend to the support of additional weight placed on the land by buildings and other structures.

Here, it is undisputed that the land in question contains improvements and that Rivercliff seeks relief for damage to Magnolia Avenue. Nevertheless, Rivercliff argues that the defendants are strictly liable because Magnolia Avenue has served as the entry to the Rivercliff Apartments for over 60 years, and the "passage of time is adequate to hold a purchaser of adjacent lands strictly responsible for any damage caused by the excavation." Docket entry #69, at 5. According to Rivercliff, when "the improvement has been present for so many years that it is essentially the natural state of the land, then strict liability may still be applied." Docket entry #42, at 5.

---

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id.* at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

Rivercliff cites *Bradley v. Valicenti*, 185 Pa. Super. 403, 138 A.2d 238 (1958). In that case, the plaintiff spread a small amount of fill dirt on her land, and five years later, an adjoining landowner's excavations caused the plaintiff's land to fall away. The Superior Court of Pennsylvania held that the small amount of fill, which was added to the rear of the property away from the area where excavation occurred, did not negate the plaintiff's absolute right to lateral support of her land. The Court noted that "the passage of five years, the resultant use of the land and exposure to the elements would make it ground in its natural condition." *Id*., 185 Pa. Super. at 406-07, 138 A.2d at 240. In a subsequent case, the Pennsylvania Supreme Court emphasized that *Bradley* did not create an additional right of lateral support and that the addition of fill dirt in *Bradley* was "insignificant . . . and not to the area collapsing and threatened with collapse." *Albert v. Wright* 410 Pa. 383, 388, 189 A.2d 753, 755 (1963).

The Court finds no similarity between this case and the facts in *Bradley*. More importantly, the Court finds no Arkansas cases that support Rivercliff's argument that improved land can be transformed to its natural state merely by the passage of time. The Court finds that Plaintiffs are not entitled to summary judgment under a strict liability standard.

<u>Negligence</u>

Next, Rivercliff argues that it is entitled to summary judgment under a negligence theory because the RAR entities failed to provide notice that they would remove soil from land adjacent to and below the Rivercliff Property. According to Rivercliff, lack of notice is proof of negligence and "the only question [for] the jury to decide is causation." Docket entry #42, at 6.

Even assuming that Defendants failed to give notice of their intention to excavate, such inaction is merely evidence of negligence. It is for a jury to decide whether, under the facts and

circumstances presented, an excavator's failure to give notice of his intention to excavate amounts to a breach of the duty of ordinary care. Furthermore, Defendants have presented evidence that the RAR entities took affirmative steps in an effort to prevent harm to adjoining landowners, *see* docket entry #63, Ex. #4, and the Court finds that genuine issues of fact exist on the issue of negligence. Accordingly, Rivercliff's motion for partial summary judgment will be denied.

### **Defendants' Motion to Exclude Opinion Testimony, Motion for Partial Summary Judgment on Lateral Support Claim, and Motion to Strike Affidavit Testimony**

Defendants ask the Court to exclude opinion testimony by Rivercliff's expert, Mark Wyatt, asserting that Wyatt's proposed testimony concerning causation is both irrelevant and unreliable. Additionally, Defendants seek summary judgment on Rivercliff's claim that the RAR entities breached a duty to provide lateral support, asserting that the exclusion of Wyatt's testimony leaves Rivercliff without evidence essential to prove causation.

<u>Motion to Exclude Expert Evidence</u>

Rule 702 of the Federal Rules of Evidence permits a witness qualified as an expert by "knowledge, skill, experience, training, or education" to give his or her opinion when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." In *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 113 S. Ct. 2786, 2797 (1993), the Supreme Court held that Rule 702 imposes a special obligation upon a trial judge to insure that the scientific or technical principles and methodology underlying expert testimony are reliable. *Id., see also Kumho Tire Co., Ltd., v. Carmichael*, 119 S. Ct 1167, 1175 (1999). Additionally, a trial court must determine whether proffered testimony "fits" the facts of the case; that is whether the testimony is relevant and sufficiently tied to the facts of the case

that it will aid the jury in resolving a factual dispute. *Daubert*, 113 S.Ct. at 2796 (citation omitted).

*Relevance*. The parties agree that a shallow slope failure has occurred in the soil directly beneath Magnolia Avenue. Defendants assert, however, that proof of a deep slope failure is essential to establish a causal relationship between the excavation work at issue and damage to Magnolia avenue. According to Defendants, Wyatt's proposed opinion testimony lacks relevance because he has acknowledged that he has no objective evidence of deep slope failure, and his studies reveal, at most, the risk of deep slope failure.

In a report dated April 4, 2011, Wyatt states that the slope in question exhibited no movement since the 1950's and that an equilibrium condition was disrupted when the toe or base of the slope was excavated, which caused a progressive slide associated with the on-site fill at the top of the slope. *See* docket entry #77, Ex. A, at 6. Wyatt reports that movement at the top of the slope "appears to be intimately connected with hillside movement" and that development of scarps and tension cracks indicate that movement will continue. *Id.* In deposition, Wyatt testified as follows:

> Q: But if I understand your opinion here, you're saying that the excavation which took place at the bottom of the hill has caused the shallow failure under Magnolia Avenue, correct?
>
> A: My opinion is that excavation at the toe allowed the hillside to move and that we are seeing the results of that movement. And the first thing you're going to see–sliding is going to be exhibited at the weakest point first which is that shallow slide. But the hillside is moving, is going to move. I mean, analytically that's what we see.

Docket entry #46, Ex. F ("Wyatt Dep.") at 139-140.

Wyatt acknowledges that he has no objective evidence of deep-seated movement, but

according to his report dated April 4, 2011, the results of stability tests indicate "that there is a significant potential for a deep slide to occur," which would "almost certainly" take Magnolia Avenue out of service. *See* docket entry #77, Ex. A, at 5.

Defendants' challenge to the relevance of Wyatt's testimony rests on the proposition that evidence of deep slope failure is essential to Rivercliff's lateral support claim. Although Wyatt has acknowledged that he has no objective evidence that deep slope failure has occurred, the Court finds that his opinion that the hillside movement is progressive and that such failure is likely to occur is relevant to Rivercliff's lateral support claim, particularly Rivercliff's request for an injunction requiring the RAR entities to restore lateral support and restore stability to the hillside.

*Reliability*. Several factors might be relevant to a trial court's inquiry regarding the reliability of the principles and methodology underlying expert testimony including (1) whether a theory or technique can be and has been tested, (2) whether a theory or technique has been subject to peer review and publication, (3) whether, with respect to a particular technique, there is a high known or potential rate of error and whether there are standards controlling the technique's operation, and (4) whether the theory or technique enjoys general acceptance within a relevant scientific community. *Daubert*, 113 S.Ct. at 2797. But these factors "may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony." *Kumho*, 113 S. Ct. at 1175-76.

Defendants contend that Wyatt's opinion is unreliable because it is based on "unscientific analysis and fallacious reasoning." According to Defendants, Wyatt reasons that because damage to Magnolia Avenue followed the excavation at issue, the damage must have been

caused by the excavation. However, Wyatt's report and his affidavit dated September 30, 2011 indicate that he formed his opinion after numerous visits to the site, reviewing available survey and topographic data, reviewing engineer reports, and conducting subsurface exploration and slope stability analyses.

It is clear that Defendants quarrel with the factual basis of Wyatt's opinion, not his methodology.[2] "'[T]he factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination.'" *Arkwright Mut. Ins. Co. v. Gwinner Oil*, *Inc.*, 125 F.3d 1176, 1183 (8th Cir. 1997)(quoting *Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir.1995)). "'Only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.'" *Id.*(quoting *Hose*, 70 F.3d at 974). To the extent that Defendants insist that Wyatt must have evidence of a deep slope failure, they may attack his opinion on cross examination. Defendants have simply failed to demonstrate that Wyatt's testimony is so fundamentally unsupported that it can offer no assistance to the jury.

<u>Motion for Summary Judgment on Lateral Support Claim and Related Motion to Strike Affidavit Testimony</u>

Having denied Defendants' motion to exclude Wyatt's testimony, the primary basis for Defendants' motion for partial summary judgment (that Rivercliff lacks expert testimony on the issue of causation) is moot. Defendants also argue that Wyatt's testimony, even if admissible, is

---

[2]Defendants' expert, Sean Baker, acknowledged in deposition that he uses the same methodology employed by Wyatt in assessing slope stability. *See* docket entry #77, Ex. #3, at 53-54. Baker testified that he does not challenge Wyatt's methodology, but he believes that Wyatt should have employed different assumptions regarding soil parameters. *Id*. Furthermore, in a reply brief, Defendants state that they do not questions Wyatt's qualifications as an expert, nor do they challenge the methodology of his slope stability analyses.

insufficient to allow a reasonable jury to find in Rivercliff's favor because his testimony "rests on the logical fallacy *post hoc ergo propter hoc* and does not address . . . possible alternative causes." For reasons previously stated, Wyatt's expert report and deposition testimony do not indicate that he has employed "after this, therefore because of this" logic to reach his conclusion that Defendants' excavation resulted in damage to Magnolia Avenue. As for possible alternative causes, Wyatt testifies by affidavit that although water and movement of weaker fill materials could have contributed to the movement exhibited, they were not the likely primary cause of movement. Docket entry #77, Ex. #2, ¶ 7.

Defendants ask the Court to strike Wyatt's affidavit, asserting that he "did not opine during his deposition that these alternative possible causes were unlikely to have occurred, although he had ample opportunity to provide such information." Docket entry #81, at 12. The authority to disregard an affidavit and grant summary judgment on the remaining record is limited to situations "'where the conflicts between the deposition and affidavit raise only sham issues.'" *Baker v. Silver Oak Senior Living Management Co., L.C.* 581 F.3d 684, 690 (8th Cir. 2009)(quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361 (8th Cir.1983)). Even assuming that Wyatt's affidavit testimony conflicts with his deposition testimony, Defendants have failed to show that Wyatt's testimony regarding alternative causes raises only sham issues. Accordingly, the Court denies the motion to strike and finds that Defendants are not entitled to partial summary judgment on Rivercliff's lateral support claim.

## Stapleton's and the RAR Entities' Motion for Partial Summary Judgment on Punitive Damages

Under Arkansas Code § 16-55-206, a plaintiff seeking punitive damages has the burden to prove, by clear and convincing evidence, the presence of either or both of the following

aggravating factors: (1) the defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damage and that he or she continued the conduct with malice or in reckless disregard of the consequences from which malice may be inferred; or (2) the defendant intentionally pursued a course of conduct for the purpose of causing injury or damage.³ *See* Ark. Code Ann. §§ 16-55-206, 207. Punitive damages are not a favorite of the law in Arkansas, and negligence, even gross negligence, is never enough to support punitive damages. *See In re Aircraft Accident at Little Rock*, 351 F.3d 874, 876 (8th Cir.2003) (quoting *Diamond Shamrock Corp. v. Phillips*, 256 Ark. 886, 511 S.W.2d 160, 164 (1974) and *Louisiana and North West R.R. Co. v. Willis*, 289 Ark. 410, 415, 711 S.W.2d 805, 808 (1986)).

Stapleton and the RAR entities assert that Rivercliff is unable to present any evidence from which a reasonable jury could conclude that the RAR entities acted intentionally or with conscious disregard of the consequences. In an effort to show that genuine issues for trial exist on its claim for punitive damages, Rivercliff submits evidence of the following events. Stapleton hired a civil engineer group managed by Brian DeLatte ("DeLatte") in connection with the Residences Property development project. On April 1, 2008, Stapleton received an email message from DeLatte, stating that the preliminary site plan for the Residences Property included massive retaining walls along the northwest and west boundaries of the site. *See* docket entry #70, Ex. #10. Stapleton responded: "We don't want no massive retaining walls!!!! Anything we can do?" *Id*. The next day, DeLatte informed Stapleton that a retaining wall was

---

³A plaintiff must also prove that the defendant is liable for compensatory damages, *see* Ark. Code Ann. § 160-55-206, but this component is not at issue here.

11

needed to hold back a 50 to 60 foot cliff. *See* docket entry #70, Ex. #9. On April 24, 2008, the City of Little Rock rejected Stapleton's application for a building permit on the ground that the proposed retaining wall failed to meet code restrictions. Docket entry #70, Ex. #11. By email message dated April 20, 2009, an engineer wrote Glenn Calvert, the architect who had submitted the building permit application, stating: "These comments are the first I've heard about a retaining wall. Also, there is no mention of a retaining wall in the geotech report. I can fake something in for the building permit, but we'll need additional data to do a final design." Docket entry #70, Ex. #12.

Rivercliff asserts that Stapleton was keenly aware that he needed additional topographic information necessary to accurately assess the need for a retaining wall, but he failed to obtain such information. Rivercliff submits evidence that in August 2008, a representative for Rivercliff asked Stapleton about his intentions regarding excavation, and Stapleton assured him that he would not excavate the hillside but might remove some vegetation. Docket entry #70, Ex. #14, at 82. RAR commenced excavation in October 2008, and the extent of the excavation is in dispute.

After the excavation in question took place, Stapleton rejected a proposal for the construction of a retaining wall, *see* docket 70, Ex. #18. Eventually, Stapleton did install a retaining wall, but Rivercliff contends that it is insufficient to restore hillside instability caused by the excavation.

Viewing the evidence in a light most favorable to Rivercliff, the Court finds that a reasonable juror could find that Stapleton, acting on behalf of the RAR entities, knew or had reason to know that proceeding with excavation of the hillside without a recommended

retaining wall in place would inflict injury to the Rivercliff Property, but he proceeded with excavation with conscious indifference to the consequences, from which malice may be inferred. Accordingly, the Court finds that the separate defendants are not entitled to summary judgment on punitive damages. *However, Rivercliff may not offer evidence that is relevant solely to the issue of punitive damages without first seeking the Court's permission, outside the hearing of the jury.*

### Nations' Motion for Summary Judgment on Punitive Damages

Nations seeks summary judgment in its favor with respect to Rivercliff's claim for punitive damages. In response, Rivercliff acknowledges that "discovery has not revealed a substantial factual basis upon which punitive damages maybe assessed against Nations." Docket entry #74, at 2. In light of Rivercliff's response, Nations' motion will be granted.

### Stapleton's and the RAR Entities' Motion for Partial Summary Judgment - Piercing the Corporate Veil

RAR LP is organized under Delaware law, with a principal place of business in Texas, and RAR GP, LLC, also organized under Delaware law with a principal place of business in Texas, serves as the general partner for RAR LP. Rivercliff sues the RAR entities for breach of the duty to provide lateral support and trespass and seeks to hold Defendant Stapleton, part owner and manager of the entities, liable for damages under a veil-piercing theory. Stapleton and the RAR entities move for partial summary judgment, asserting that Rivercliff has failed to raise any material issues of fact with respect to its veil-piercing claim.[4]

---

[4] The doctrine of piercing the corporate veil is an equitable remedy; it is not itself a cause of action for wrongful conduct. *See Tamko Roofing Products, Inc., v. Smith Engineering Co.*, 450 F.3d 822, 726 n.2 (8th Cir. 2006). Recognizing this distinction, the Court will nevertheless

Before turning to whether summary elimination of Rivercliff's veil-piercing claim is warranted, the Court makes the following observations. First, the parties refer to RAR GP, LLC and RAR LP collectively, even though they are separate business entities. Separate business entities do not become a single entity merely because the officers or owners of one are also officer and owners of the other. *See K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC,* 373 Ark. 14, 32-33, 280 S.W.3d 1, 16 (2008)(citations omitted).

Second, without discussing which state's law governs or whether a conflict of law exists, the parties cite Arkansas cases addressing the doctrine of piercing the corporate veil, and they fail to address the impact of conflicting statutory provisions.[3]

Even assuming that RAR LP and RAR GP, LLC are properly regarded as a single entity and that Arkansas common law governs Rivercliff's veil-piercing claim, the Court finds that Rivercliff has presented genuine issues for trial. The veil-piercing doctrine generally provides that an owner of a corporation may be held liable for corporate obligations where the corporation is a sham and a mere alter ego of the owner. Under the doctrine, liability is imposed on the individual owner because the corporation is not a bona fide independent entity.[4]

---

adopt the parties' terminology and refer to Rivercliff's "veil-piercing claim."

[3]Arkansas has adopted the Revised Uniform Limited Partnership Act, which provides that a "limited partner is not personally liable, directly or indirectly, by way of contribution or otherwise, for an obligation of the limited partnership solely by reason of being a limited partner, *even if the limited partner participates in the management and control of the limited partnership*. Ark. Code Ann. § 4-47-303(emphasis added). Delaware law, on the other hand, provides that a limited partner is not liable for the obligations of a limited partnership unless he participates in the control of the business. *See* Del. Code Ann. tit. 6, § 17-303(a).

[4]Rivercliff argues that genuine issues of material fact remain as to the "claims against Stapleton individually for his own actions." However, Rivercliff does not assert a tort claim

Arkansas law provides that, in special circumstances, a court may disregard the corporate facade when the corporate form has been illegally abused to the injury of a third party. *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners*, *LLC* , 373 Ark. 14, 32, 280 S.W.3d 1, 15 (2008)(citing *EnviroClean, Inc. v. Arkansas Pollution Control & Ecology Comm'n*, 314 Ark. 98, 858 S.W.2d 116 (1993) and *Don G. Parker, Inc. v. Point Ferry, Inc*., 249 Ark. 764, 461 S.W.2d 587 (1971)). "The conditions under which the corporate entity may be disregarded or looked upon as the alter ego of the principal stockholder vary according to the circumstances of each case." *Id.* (citing *Winchel v. Craig*, 55 Ark. App. 373, 934 S.W.2d 946 (1996)).

Here, Rivercliff alleges that Stapleton formed RAR LP and RAR GP, LLC for the single purpose of developing the Residences Properties. According to Rivercliff, the RAR entities have been undercapitalized from their inception, and "Stapleton could not afford to undertake a responsible assessment of the hillside as any recommendation that might require . . . additional cost would obstruct his project goals." Docket entry #72, at 12. According to Rivercliff, the "stacking" of the two limited liability entities "makes ever more remote any accountability for injury to Rivercliff."[5] Docket entry #72, at 9.

Rivercliff claims that Stapleton has treated the entities as his own by personally withdrawing substantial funds from the underfunded entities and by paying subcontractors

---

against Stapleton as an individual. Instead, Rivercliff seeks to hold Stapleton liable for alleged torts committed by RAR LP and RAR GP, LLC. *See* Amend. Compl., ¶¶ 48-55. Liability under the piercing doctrine is not predicated on the individual owner's participation in tortious activity.

[5]Stapleton and the RAR entities assert that both Arkansas and Delaware statutes provide that a "person" may serve as general partner in a limited partnership and define the term "person" to include a limited liability company. *See* docket entry #84 (citing Del. Code Ann. tit. 6, §§ 17-401(a), 17-101(14) and Ark. Code Ann. §§ 4-47-401, 4-47-102(14)).

directly from his management company, Montford Management LP ("Montford"). According to Rivercliff, Stapleton received a $31,250 commission when the Residences Property was "parked" pending sale to RAR LP, a $93,413 commission when RAR LP purchased the property; and a $268,775 developer fee. *Id.*

Although it appears that Stapleton does not own a majority of either RAR entity,[6] Rivercliff maintains that he controls and manages the entities and acts independently of other members and partners. To support its claim, Rivercliff presents copies of email communications and other documents tending to show that Stapleton runs the RAR entities and Montford. *See eg.*, docket entry #70, Exs. #4, #5, #7, #8, #11. Additionally, Rivercliff presents evidence that the RAR entities are unable to pay bills as they become due, *see* docket entry #70, Ex. 21, at 67, and that the entities' insurance coverage does not extend to punitive damages or intentional acts. *See* docket entry #51, Exs. F, G.

Finally, Rivercliff asserts that the RAR entities are likely insolvent, citing the following excerpt from the deposition of Ray Bell, an excavator hired by Nations to perform the excavation work at issue in this case:

> Q: So - - have - - have they refused to make the payment that you've demanded?
>
> A: They have paid me up to a point. And just like they said, they run out of money.

Docket entry #70, Ex. 21, at 67.

In support of their motion for partial summary judgment, the separate defendants present

---

[6]Defendants present a chart showing that Stapleton is a limited partner in RAR LP, owing a 19.12% share, and member of RAR GP, LLC, owning a 42.50% share. *See* docket entry #51, Ex. C.

evidence that the RAR entities continue to exist and remain in good standing with the Arkansas Secretary of State, *see* docket entry #51, Exs. A, B, and have $1,000,000 in primary liability coverage and $10,000,000 in excess coverage, *see* docket entry #51. Regarding capitalization, it is undisputed that the RAR entities were initially capitalized with at least $2,201,000 in capital contributions and a $11,500,000 construction loan. However, the Court is without information regarding budgets and costs associated with the Residences Property development project.

As for Stapleton's alleged withdrawals and payments to subcontractors, separate defendants present evidence that RAR LP entered a management agreement with Montford, under which Montford collects funds on behalf of RAR LP and pays the entity's expenses. *See* docket entry #84, Ex. A. According to the affidavit of Montford's controller, Debra Lyn Mino, Montford established a separate bank account for the management and finances of RAR LP, funded solely by construction loan money, capital contributions by RAR LP partners, and income from RAR LP operations. *Id.* Mino denies that Stapleton received a $93,413 commission payment. According to Mino, RAR LP agreed to pay a 4% developer fee, totaling $538,000 and that half of the fee was contributed to RAR LP, and "half was paid to either RAR LLC or Montford in monthly increments of $17,500." *Id.*

Reviewing the record in a light most favorable to Rivercliff, the Court finds that summary judgment is not warranted.[4] Whether to pierce the corporate veil is a fact-intensive inquiry, and the record reveals genuine issues of material fact regarding the sufficiency of

---

[4] As previously stated, the Court assumes for the purpose of review that RAR LP and RAR GP, LLC are properly regarded as a single entity and that Arkansas common law governs Rivercliff's veil-piercing claim.

capitalization and whether Stapleton has abused the separate legal status of the RAR entities and treated them as his own.

### Rivercliff's Motion to Compel

Rivercliff seeks an order compelling Stapleton, RAR LP, and RAR GP, LLC to provide complete responses to discovery requests seeking financial information, including copies of financial projections or budgets related to the Residences project; closing statements and documents associated with the purchase of the Residences Property; and financial statements, bank statements, accounting records, tax returns, and minutes of meetings for the RAR entities.

The separate defendants object, asserting generally that the information sought is confidential and lacks relevance because there are no genuine issues for trial as to Rivercliff's veil-piercing claim and claim for punitive damages. For reasons previously explained, the separate defendants are not entitled to summary judgment on punitive damages and veil-piercing issues. Furthermore, the Court finds that the information sought is relevant and likely essential to Rivercliff's claims. As for the separate defendants' objection that the information sought is confidential, Rivercliff states that it has no objection to the entry of an agreed protective order that would prevent disclosure of confidential information.

For the reasons stated, the Court finds that Rivercliff's motion to compel should be granted. The parties are directed to provide an agreed protective order within five days from the entry of this order, and the separate defendants are directed to provide complete responses to the discovery requests at issue within ten days from entry of the agreed protective order.

IT IS THEREFORE ORDERED that:

(1)     Plaintiff's motion for summary judgment (docket entry #41) is DENIED.

(2) Defendants' motion to exclude expert testimony and for partial summary judgment (docket entry #46) is DENIED.

(3) Defendants' joint motion to strike affidavit testimony (docket entry #80) is DENIED.

(4) Separate Defendants Stapleton and the RAR entities' motion for summary judgment on punitive damages (docket entry #48) is DENIED.

(5) Separate Defendant Nations' motion for summary judgment on punitive damages (docket entry #49) is GRANTED.

(6) Separate Defendants Stapleton and the RAR entities' motion for summary judgment on Rivercliff's veil-piercing claim (docket entry #51) is DENIED.

(7) Rivercliff's motion to compel discovery responses (docket entry #32) is GRANTED. The parties are directed to submit an agreed protective order within five (5) days from the entry of this order. The agreed order should be mailed to chambers or attached to an e-mail addressed to swwchambers@ared.uscourts.gov. Please type the case name and number in the subject box. Separate Defendants Stapleton and the RAR entities are directed to provide complete responses to Rivercliff's discovery requests within ten (10) days from the entry of the agreed protective order.

IT IS SO ORDERED THIS 2nd DAY OF DECEMBER, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE